IN THE COURT OF APPEALS OF TENNESSEE
WESTERN SECTION AT NASHVILLE

_____

KENNETH O. BURNETT,
and VICKIE S. BURNETT,

    Plaintiffs/Appellees

VS.

FRANK E. KRISLE,
Individually and d/b/a ELITE
ELECTRIC

    Defendant/Appellant.

Davidson Circuit No. 89C-337
C.A. No. 01A01-9505-CV-00196

Hon. Paul R. White, Judge

**FILED**

**Dec. 22, 1995**

**Cecil Crowson, Jr.**
Appellate Court Clerk

ROBERT N. SKINNER, Nashville
Attorney for Defendant/Appellant.

J. ANTHONY ARENA, Schulman, LeRoy & Bennett, P.C., Nashville
Attorney for Plaintiffs/Appellees.

*AFFIRMED*

Opinion Filed:

_____

**TOMLIN, Sr. J.**

    Kenneth O. Burnett and Vickie S. Burnett ("plaintiffs") filed suit in the Davidson County Circuit Court against Frank E. Krisle, individually and d/b/a Elite Electric ("defendant") seeking damages resulting from a fire caused by defendant's negligence that destroyed plaintiffs' home. The jury awarded plaintiffs compensatory damages in the amount of $90,733.56, reduced by a finding that plaintiffs were ten percent (10%) at fault. Defendant's motion for a new trial was denied. On appeal defendant has presented three issues for our consideration: (1) whether there was any material evidence in the record to support the jury verdict; (2) whether the trial court erred in refusing to grant defendant a new trial or a remittitur; and (3) whether the trial court erred in refusing to allow defendant to present a witness for testifying after defendant had rested his case. We find no error and affirm.

    Many of the basic facts are undisputed. Plaintiffs employed a general contractor

1

to construct an addition to their kitchen in their Nashville home. The general contractor in turn employed defendant to do the electrical work. When construction began plaintiffs met with the general contractor and an employee of defendant to show them the location of the circuit breaker box in the basement of their residence. Mr. Burnett showed the two men the breaker on the circuit leading to the kitchen as well as the breaker for the circuit leading to a recessed wall heater in the basement bathroom, which bore the label "leave off." Plaintiff testified that this bathroom heater had not been utilized since they purchased the house six years earlier because the house was equipped with central heating.

On that same day defendant installed some of the wiring but left a portion of the work unfinished. Approximately one week later another of defendant's employees entered plaintiffs' home unannounced for the purpose of installing electrical outlets and a ceiling fan. After completing this work, this employee activated the breaker switch to the lines in the kitchen to ascertain if the wiring had been properly installed. Shortly after this employee left, the bathroom wall heater ignited combustibles in the bathroom, which began a fire that destroyed the basement of plaintiffs' home and all of plaintiffs' possessions in the house.

The jury was submitted a special verdict form, which they answered as follows:

> 1.    Was the defendant Frank E. Krisle, individually and d/b/a Elite Electric negligent?
>
> Answer: *Yes*  (Yes or No)
>
>    . . . .
>
> 2.    Was the defendant Frank E. Krisle, individually and d/b/e Elite Electric's negligence a proximate cause of injury or damage to the plaintiffs?
>
> Answer: *Yes* (Yes or No)
>
>    . . . .
>
> 3.   Did the plaintiffs Kenneth Burnett's and Vickie Burnett's own negligence account for 50 percent or more of the total negligence that proximately cause plaintiffs' injuries or damages?

Answer: *No* (Yes or No)

. . . .

4. What is the total amount of plaintiffs Kenneth Burnett's and Vickie Burnett's compensatory damages, determined without reference to the amount of their negligence?

Amount in dollars: $90,733.56

5. Using 100 percent as the total combined negligence which proximately caused the injuries or damages to the plaintiffs, what are the percentages of such negligence to be allocated to the plaintiffs Kenneth Burnett and Vickie Burnett and defendant Frank E. Krisle, individually and d/b/a Elite Electric?

Plaintiffs (Kenneth Burnett and Vickie Burnett)          10%
  (0-100)

+

Defendant (Frank E. Krisle, individually and
       d/b/a Elite Electric)                    90%  (0-100)

(Total must equal 100%)

## I. Scope of Review

Our scope of review on appeal of a jury verdict is limited to whether the record contains any material evidence to support the verdict. T.R.A.P. 13(d); Hobson v. First State Bank, 777 S.W.2d 24, 32 (Tenn. App. 1989). Under this scope of review, we must take the strongest view of the evidence to uphold the verdict, assume the truth of all that lends to support it, discard all to the contrary, and allow all reasonable inferences to sustain the verdict. Hobson, 777 S.W.2d at 32. Even if we might reach a different verdict from that reached by the jury, if there is any material evidence to support the verdict, we must affirm. Id.

In our opinion, there was ample material evidence to support the verdict the jury has expressed in the special verdict form. Plaintiffs testified that they pointed out the location of the breaker to the wall heater circuit to defendant's employee, and at that time the switch was in the "off" position and clearly labeled "leave off." Plaintiffs further

3

testified that they had never used this wall heater during the entire time they had lived in the house because the house had central heating.

The record reflects that another of defendant's employees arrived at plaintiffs' home to complete the work at approximately 8:30 in the morning. He stated that he never saw the warning label next to the wall heater circuit breaker and that at time he arrived the basement was unlit and he did not have a flashlight with him. He was uncertain as to whether he had activated more than one breaker switch on the breaker panel after completing his work. This issue is without merit.

II. The New Trial/Remittitur Issue

In defendant's brief counsel bases his allegation of error on the part of the trial court in failing to grant a new trial or remittitur on three aspects. First, defendant attacks the jury's award of damages for the loss of personal property of plaintiffs on the second floor in light of testimony that there was no actual fire damage upstairs. This contention raises again the question of whether there was any material evidence to support the verdict. There was testimony to the effect that although only the basement portion of the home was actually destroyed by fire, plaintiffs' personal property upstairs on the main floor was completely destroyed by heat, smoke, and water damage. This contention is without merit.

Next, defendant is bothered by a question the jury presented to the court during its deliberation. A note from the jury stated:

> Re Question #4: Does "compensatory damages" equate to the jury agreeing that the total loss (home and belongings) amounting to approx[imately] $91,000 is reasonable even if it is reduced by some percentage in question number five?

Defendant contends that this question clearly indicated that the jury had arrived at a

4

predetermined sum to be awarded plaintiffs before taking the negligence of defendant into account. We disagree. It appears to the court that the jury was merely requesting a clarification of the term "compensatory damages." In response to the jury's question, the trial judge repeated the charge to the jury regarding comparative negligence. All this took place in the presence of defendant's counsel, who neither complained of the action taken by the trial court or requested further corrective relief. This contention is without merit.

The third aspect of this issue raised by defendant deals with the failure of the trial court to grant a new trial or remittitur based upon the alleged admitted negligence of plaintiffs in failing or refusing to repair or replace a known and obvious hazard in the form of the "defective wall heater." The trial court at the hearing on the motion for new trial stated that he considered all the evidence and that there was sufficient evidence in the record to support partial negligence on the part of both parties. We agree. This contention is also without merit.

### III. Defendant's "Sundown Witness"

As this issue is presented by defendant in its brief, it would appear that defendant complains of an action of the trial court in refusing to allow defendant to reopen his case with what he contends to be a material witness. The record does not reflect this.

Near the end of the first day of trial, counsel for defendant informed the court that there was a witness that defendant was seeking to present as evidence but had not yet responded to a subpoena. It was ascertained that the witness in question had been subpoenaed on that very day. The court expressed some concern about the relevance of the testimony of the proposed witness. Following discussion between the court and counsel for both parties, during which the court stated some doubt as to the relevance of the testimony of the proposed witness of defendant, counsel for plaintiffs advised the court that they would withdraw the offer of evidence that they were seeking to introduce at that time. The following colloquy took place:

5

MR. SKINNER (defendant's counsel): I'll help you all I can. I say charge the jury.

MR. ARENA (plaintiff's counsel): We can go right to closing arguments.

MR. SKINNER: Yes, sir. Charge the jury.

The jury was brought back into the courtroom, at which time the following brief exchange took place:

THE COURT: Is that the conclusion of the defendant's proof?

MR. SKINNER: That is the conclusion of our case in chief. We renew our motion [for directed verdict].

Court adjourned until the following morning for closing arguments and jury instructions.

The following morning, following the convening of court, the following took place outside the presence of the jury:

MR. SKINNER: Let me also tell the court, the witness showed up this morning, first words to me, how did you find me? I said, the FBI found you. He said, If I ever find out, I'll get them.

He did not want to come to court. He was an unwilling witness, but he did come, and he brought the copies of his two reports. But I told him that as much as I'd like to use them, I had already committed myself yesterday to the court and counsel that we would proceed as we are now.

THE COURT: I think the proof is closed.

MR. SKINNER: Right.

THE COURT: So we will move on to argument and charge. Okay. Is there anything else then before we get to final argument, any other matters or issues you want the court to address?

MR. ARENA: Nothing I can think of, Your Honor.

MR. SKINNER: If it please the court, I know of none at this time.

6

At no time during these proceedings did counsel for the defendant challenge the action of the court. To the contrary, counsel for defendant facilitated the action of the court by voluntarily, with no cajoling or prodding from the court, stating on three different occasions that he had rested his proof and proposed to the court that the jury be charged. In our opinion, counsel for defendant waived this issue by his actions. In the event that we are wrong in this respect, and we contend that we are not, under the circumstances it was within the trial court's right as a matter of discretion to proceed and conclude the trial and we do not find any abuse of discretion in this regard. This issue is without merit.

Accordingly, the judgment of the trial court is all respects affirmed. Costs in this cause on appeal are taxed to defendant, for which execution may issue if necessary.

_____
TOMLIN, Sr. J.

_____
CRAWFORD, P.J.                (CONCURS)

_____
HIGHERS, J.                (CONCURS)